[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO MODIFY SUPPORT DATED
JULY 2, 1997, CODED NO. 122 AND PLAINTIFF'S MOTION FOR CONTEMPT DATEDOCTOBER 24, 1997, CODED NO. 112
Many of the facts that give rise to these two motions are not in dispute. On December 27, 1996, the court dissolved the marriage between the parties. The defendant was ordered to pay to the plaintiff, as support, a sum of $400 per week. That support order was not in accordance with the child support guidelines based on the financial affidavits submitted by the parties. The court did not make a finding that the guidelines were inappropriate or inequitable, and did not make a finding as to what the amount of support is that should have been paid by the defendant to the plaintiff. The parties have an agreement that in the event the defendant's motion for modification is granted, an order should be retroactive to August 4, 1997. The parties had entered into a stipulation dated November 25, 1996, which stipulation as orally modified in open court on December 27, 1996, was approved of by the trial court. As part of that stipulation, the defendant was to pay to the plaintiff as lump sum property settlement, the sum of $20,000 payable in installments of $4000 each year commencing March 1, 1997, and an installment of $4000 on each succeeding March 1, until paid. The defendant has failed to pay the $4000 installment due March 1, 1997. As of January 31, 1998, the defendant was in arrears in his support payments in the sum of $14,675. The defendant has failed to meet his burden of proving inability to pay the court ordered property amount or the court ordered support amount. CT Page 2846
In order for the defendant to obtain a modification of the present support order, he has the burden of proving by a fair preponderance of the evidence either that the present support order is not in accordance with the child support guidelines, or that there has been a substantial change in financial circumstances since the date the present order was entered. The court finds that the defendant has failed to meet his burden of proving either of the above two. Probably the best that can be said regarding the defendant's testimony is that it was not credible. In fact, it was incredible. The defendant initially submitted a financial affidavit dated February 3, 1998. That affidavit showed that he had no liabilities and no assets. That financial affidavit was inaccurate as brought out as a result of his having been called as a witness by the plaintiff in the following respects: (1) it failed to show a liability to the United States Government for taxes of approximately $300,000; (2) it failed to show a liability to the State of Connecticut for taxes in the approximate amount of $100,000; (3) it failed to show a liability to Vincent Lowe in the approximate amount of $100,000; (4) it failed to show a liability to M.G.M. Grand; (5) it failed to show a liability for medical bills of approximately $10,000; and (6) it also failed to show assets owned by the defendant. During his testimony on February 3, 1998, the defendant testified that he owed M.G.M. Grand approximately $10,000 as a result of gambling debts that he had incurred. When he returned to testify on February 9, 1998, he testified that he had made a mistake and that the amount that he owed M.G.M. Grand was approximately $35,000. He testified on February 3, 1998, that he never held any position in Montana Realty, Inc. in fact, as of November 19, 1996, he was the president of Montana Realty, Inc. On November 10, 1996, an agreement was entered into between Montana Realty, Inc., a Connecticut corporation having an office at 47-49 South Main Street, Newtown, Connecticut, and William A. Trudeau, Jr. (the defendant in this action) with both Montana Realty, Inc. and the defendant being referred to as a "maker" on the one hand and Seymour Svirsky on the other hand. That agreement modified a mortgage note, a mortgage deed, security agreement, assignment of leases and other loan documents including a certain mortgage note in the original principle amount of $650,000 that the defendant had individually executed. There was an outstanding balance on the mortgage note of approximately $550,000 at the time the defendant executed his financial affidavit dated December 26, 1996, when the divorce was entered that he failed to disclose on his financial affidavit. His financial affidavit of February 3, 1998, failed to disclose CT Page 2847 that liability, as did his financial affidavit of February 9, 1998. The balance due on that liability is now approximately $575,000. His financial affidavit of December 26, 1996, showed weekly income from Trudeau Oil. That entity, in fact, did not exist in December of 1996. The monthly payments on the promissory note with a balance of approximately $550,000, are in the amount of $4,583.33. The defendant has a convenient lapse of memory as to whether those payments are being made. He claims he is employed at Trudeau Service Center as the service manager. No credible evidence has been presented by him as to what his gross or net weekly income is from that position. His explanation as to why he claims he is drawing less income now than he was at the time of the divorce is that the business of Trudeau Service Center has declined over the past year. No credible evidence was presented as to what the business of Trudeau Service Center was at the time of the divorce, and no credible evidence was presented as to what the volume of business is at the present time. Between February of 1997 and February of 1998, he had paid legal fees of approximately $10,000. No credible evidence has been presented as to where that money came from. His financial affidavit of February 3, 1998, failed to show his interest in Trudeau Service Center, his interest in Montana Realty, Inc., and his interest in Malenkov Associates. Malenkov Associates owns vacant land in Newtown. No credible evidence was presented by the defendant regarding the fair market value of that land or as to the amount of the liens on that land. His financial affidavit of February 3, 1998, failed to show his one-third interest in land at 75-77 Church Hill Road. No credible evidence was presented by the defendant as to the value of that property or as to the amount of liens on that property. He loaned his father $100,000 in about March of 1997, and that money is still owed to him. Neither his financial affidavit of February 3, 1998, nor his financial affidavit of February 9, 1998, shows that loan as an account receivable. He owes legal fees totaling approximately $45,000 to four separate attorneys. His financial affidavit of February 3, 1998, does not show those liabilities, and his financial affidavit of February 9, 1998, does not show those liabilities. He owns a 100 percent interest in Montana Realty. Montana Realty owns the real estate where Trudeau Service Center is located. The balance due on the mortgage of that property is approximately $550,000. His various debts for attorneys arise out of pending criminal charges against him. He gives as a reason for not showing those debts on his financial affidavit his belief that they are corporate debts, although they arise out of individual criminal charges pending against him. That CT Page 2848 explanation, at best, is ludicrous.
In conclusion, the court finds that the defendant has failed to prove inability to pay the $4000 property installment settlement, and has failed to prove inability to make his support payments. He has failed to prove any substantial change in circumstances in his finances since the date of dissolution, and has failed to prove what his current gross and weekly income amounts are. The court awards to the plaintiff $1000 attorneys fees, as a result of finding the defendant in contempt of court for failing to make the $4000 property payment and for failing to keep current his support payments. The court orders that the $4000 property arrearage and that the $14,675 support arrearage include interest at the rate of 10 percent effective on the date this decision is filed. The court further orders that the $1000 attorneys fees ordered to be paid by the defendant to counsel for the plaintiff arising out of finding him in contempt of court be paid by April 6, 1998. The court orders that the support arrearage be paid at the rate of $100 per week with payments first applied to interest and then applied to principle. The court orders that the $4000 plus accrued interest be paid in full by August 31, 1998.
The court further authorizes an immediate wage execution for the $400 weekly support order, plus the $100 weekly arrearage order.
Axelrod, J.